GULOTTA, Judge.
Defendant appeals from a judgment awarding workmen’s compensation benefits based upon a finding of permanent total disability.[1]
The sole issue in the determination of permanent total disability in this case is whether plaintiff, subsequent to the job-related accident, worked in substantial pain.
According to defendant, the trial judge erred in finding permanent total disability when the evidence established only a temporary disability, for which plaintiff has been paid.
Thomas J. Irby was injured on March 17, 1975 while working as a “hot-shot driver” with Edwards Fishing and Rental Tools, Inc. Plaintiff’s job entailed working in a warehouse, breaking down large tools and repairing them, as well as loading and unloading those tools on pickup trucks for delivery to boats and barges.
While attempting to unload a 162-pound tool onto a boat, plaintiff fell, shattering his right elbow. He was immediately taken to the West Jefferson Hospital and underwent surgery on the following day, performed by Dr. Earl J. Rozas, an orthopedic surgeon. Plaintiff’s injury was described by Dr. Ro-zas as a “fractured dislocation of the elbow.” Postoperative recovery was apparently uncomplicated and plaintiff was seen periodically by Dr. Rozas after discharge from the hospital.
On an August 26, 1975 visit, the doctor found reduced degrees of extension and flexion, as well as a one-fourth-inch atrophy of the upper arm and forearm as compared to the left arm. He found at that time that plaintiff had suffered a twenty-five percent permanent physical impairment of the upper extremity. Although no traumatic arthritis findings were made at that time, the doctor indicated that the chances were high for subsequent development of arthritis.
Plaintiff was discharged in August 1975; however, Dr. Rozas again saw him on August 9,1976, at which time the doctor again found further reduction of extension and flexion. There was audible as well as pal *713 pable crepitation and a one-half inch atrophy of the right upper arm and right forearm was discerned. No increased arthritic changes were found. Mild pain medication was prescribed. The doctor testified further that the probable cause of the atrophy is that Irby was not using the arm “in the full manner that he was before he got hurt.” The evidence of some arthritic change in the elbow, according to Dr. Rozas, indicates also that the arm was not being fully used because of pain.
Plaintiff’s work history before and after the injury showed numerous and frequent job changes. At the time of the injury he had been employed at Edwards Tools for approximately two or three months. He found upon returning to his employment after his discharge from the doctor that he was unable to do the work. After leaving Edwards he worked for two weeks in a factory, but was unable to continue this employment because the job required holding an air gun in his right hand, causing strain on his arm. Thereafter he worked on oil rigs as a roustabout and roughneck, loading and unloading boats, sweeping around an oil rig and moving pipe.
Irby testified that during this time he had trouble with his arm and favored the right arm while working. He explained when he worked for a twelve-hour period, he suffered pain for two days thereafter. Plaintiff explained that oil field work was the only kind of work that he knew; that he had only an eleventh-grade formal education; and that his work required manual labor, which could not be accomplished without favoring his right arm and without suffering pain. He stated the pain was “like throwing your arm out of place or something."
At the time of the trial, Irby was employed as an assistant driller on a drilling rig. He indicated that occasionally he was required to do heavy, strenuous work. He was earning a salary well in excess of the amount earned at the time of the injury and was taking no medication.[2]
Asked whether engaging in manual labor would induce substantial pain, the doctor testified:
“THE COURT: Let me ask you a few questions, Doctor. I don’t ordinarily ask questions. Let me make sure we understand what you’re talking about in terms of substantial pain. It is your testimony that this plaintiff, Mr. Irby, is required as a part of the functions of his job to use his right arm in a manual labor type of activity which would require him on a twelve-hour basis to lift up objects which would be thirty-five or forty pounds, a weight during that period of time with stress on that arm. Would he not suffer substantial pain if he used his arm?
THE WITNESS: Yes, Your Honor, he would over a ten to twelve-hour period of time.”
Plaintiff’s testimony convinces us that the various and sundry types of employment in which he has been engaged involve, in one way or another, working with heavy equipment in servicing the oil industry. At certain times in the course of these jobs, he was required to engage in manual labor requiring heavy lifting, with twelve-hour workdays. When we consider the description of the jobs in which Irby engaged prior to, at the time of, and subsequent to the injury, we conclude that plaintiff worked in substantial pain.[3]
Our jurisprudence is clear that the law providing for permanent total disability benefits does not contemplate that an injured workman is required to return to his regular work if he is unable to perform that work without substantial pain. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977). Further, work-related disability is compensable even *714 though the employee returns to work and performs his previous duties, if such performance is accompanied by substantial pain. Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977).
Having concluded that plaintiff’s employment resulted in his working in substantial pain, we affirm the judgment of the trial court.

AFFIRMED.

HOOD, J., dissents.

. The work-connected accident occurred on March 17, 1975 and is covered by disability benefits, as set forth under R.S. 23:1221 prior to the 1975 amendment effective September 1, 1975.

. At the time of injury he was earning approximately $300 every two weeks. At the time of trial, he earned about $127 a day as an assistant driller, working seven days on and seven days off.

. Although the. trial judge assigned no reasons for judgment, his finding of permanent total disability indicates that he reached a factual conclusion that plaintiff was required to work in substantial pain.